**Dated:  August 14, 2020**

ORDERED.

Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| STEIN MART, INC.[1] | Case No. 3:20-bk-2387 |
| STEIN MART BUYING CORP. | Case No. 3:20-bk-2388 |
| STEIN MART HOLDING CORP., | Case No. 3:20-bk-2389 |
| Debtors. | Joint Administration Requested |

## INTERIM ORDER (I) AUTHORIZING
## USE OF CASH COLLATERAL AND AFFORDING
## ADEQUATE-PROTECTION; (II) MODIFYING AUTOMATIC STAY;
## (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF

This matter coming before this Court on the *Debtors' Emergency Motion Seeking Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Affording Adequate-Protection; (II) Modifying the Automatic Stay; (III) Scheduling A Final Hearing; and (IV)*

---

[1] The tax identification numbers of the Debtors are as follows: Stein Mart, Inc. 6198; Stein Mart Buying Corp. 1114; and Stein Mart Holding Corp. 0492. The address of the Debtors' principal offices: 1200 Riverplace Blvd., Jacksonville, FL 32207.  The Debtors' claims agent maintains a website, https://cases.stretto.com/SteinMart, which provides copies of the Debtors' first day pleadings and other information related to the case.

6240799.5

*Granting Related Relief* (the "Motion")[2] (Doc. No. 7) at an interim hearing on August 14, 2020 (the "Interim Hearing"), the Court having reviewed the Motion, the *Declaration of Hunt Hawkins in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "Declarant Declaration"). The Motion requests the entry of an interim order (the "Interim Order"):

(a)     authorizing the Debtors' use of Cash Collateral (as defined below), subject to the terms of this Interim Order, and granting adequate-protection to the ABL Agent, ABL Lenders, Term Agent, and Term Lenders (each as defined below) in respect of their rights under the ABL Loan Documents and Term Loan Documents (each as defined below), as applicable, and their interests in the Prepetition Collateral (as defined below) pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code with respect to any Diminution in Value (as defined below) of such rights and interests on and after the Petition Date (as defined below);

(b)     vacating and modifying the automatic stay arising under section 362 of the Bankruptcy Code in accordance with the provisions hereof to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(c)     scheduling a final hearing (the "Final Hearing") pursuant to Bankruptcy Rule 4001(b)(2) to be held before this Court to consider entry of an order authorizing and granting the relief requested in the Motion on a final basis (the "Final Order"); and

(d)     granting certain related relief.

The Court having considered the Motion, the Declarant Declaration, the other filings and pleadings in the above-captioned consolidated chapter 11 cases (each individually a "Case" and collectively, the "Cases"), and the evidence submitted or adduced and the arguments of counsel made at the Interim Hearing; and notice of the Interim Hearing having been given in accordance

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

6240799.5

with Bankruptcy Rules 2002, 4001(b)(c), and (d), and 9014; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable, in the best interests of the Debtors, their estates, and their creditors and equity holders, and essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS AND DECLARATIONS AND REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A. <u>Petition Date</u>.  On August 12, 2020 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. ("<u>the Bankruptcy Code</u>") in the United States Bankruptcy Court for the Middle District of Florida (the "<u>Bankruptcy Court</u>" or this "<u>Court</u>"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

B. <u>Jurisdiction and Venue</u>.  This Court has core jurisdiction over these Cases, this Motion and the parties and property affected hereby pursuant to 28 U.S.C. sections 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. sections 1408 and 1409. The statutory bases for the relief set forth in this Interim Order are sections 105, 361, 362, 363, 507

---

[3] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

and 552 of the Bankruptcy Code, Federal Bankruptcy Rules 2002 and 4001 and Rule 2081-1(g)(1) of the Local Rules.

C.      <u>Notice</u>.  Upon the record presented to the Court at the Interim Hearing, and under the exigent circumstances set forth therein, requisite notice of the Motion and the relief requested thereby and this Interim Order has been provided in accordance with Bankruptcy Rules 4001(b) and 4001(c)(1) to (a) the United States Trustee for the Middle District of Florida (the "<u>U.S. Trustee</u>"); (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Creditors filed pursuant to Bankruptcy Rule 1007(d); (c) the Internal Revenue Service; (d) Wells Fargo Bank, National Association, in its capacity as ABL Agent (as defined below); (e) Gordon Brothers Finance Company, in its capacity as Term Agent (as defined below); (f) the United States Attorney's Office for the Middle District of Florida; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for all states in which the Debtors conduct business; (i) all parties known to the Debtors who hold any liens or security interests in the Debtors' assets who have filed UCC-1 financing statements against the Debtors; and (j) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>"), which notice was appropriate under the circumstances and sufficient for the Motion, and the entry of this Interim Order; and no further notice of, or hearing on, the entry of this Interim Order is necessary or required.

D.      <u>Creditors' Committee</u>.  As of the date hereof, the U.S. Trustee has not appointed an official committee of unsecured creditors (a "<u>Committee</u>") in accordance with Bankruptcy Code section 1102.

E.      <u>The Debtors' Stipulations as to Existing Secured Debt</u>.  Subject only to the limitations contained in paragraph 18 of this Interim Order, the Debtors, for themselves, their

estates, and all representatives of such estates, admit, stipulate, acknowledge, and agree (collectively, the "Debtors' Stipulations") as follows:

(i)    Cash Collateral.  Any and all cash of the Debtors, including cash and other amounts on deposit or maintained in any bank account or accounts of the Debtors and any amounts generated by the collection of accounts receivable, the sale of inventory, or other disposition of the Collateral (as defined below) existing as of the Petition Date or arising or acquired after the Petition Date, together with all proceeds of any of the foregoing, is cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral") of the ABL Agent and the Term Agent. For the avoidance of doubt, Cash Collateral includes any proceeds from the sale of inventory or any other Collateral (as defined below). Pursuant to section 363(c)(2) of the Bankruptcy Code, Debtors are not able to use Cash Collateral without the ABL Agent's and the Term Agent's consent or this Court's authorization after notice and a hearing. The ABL Agent and the Term Agent are willing to consent to the Debtors' use of the Cash Collateral, expressly limited to, and conditioned on, the terms and conditions specified in this Interim Order.

(ii)    ABL Credit Facility.  Pursuant to the Second Amended and Restated Credit Agreement dates as of February 3, 2015, by and among the Debtors, Wells Fargo Bank, National Association, in its capacities as Administrative Agent, Collateral Agent, LC Issuer and Swing Line Lender, "ABL Agent"), and the lenders party thereto (the "ABL Lenders"), as amended by Amendment No. 1 to the Second Amended and Restated Credit Agreement, dated February 19, 2018, Amendment No. 2 to Second Amended and Restated Credit Agreement, dated as of March 14, 2018, Amendment No. 3 to Second Amended and Restated Credit Agreement, dated as of September 18, 2018, Amendment No. 4 to Second Amended and Restated Credit Agreement, dated as of February 26, 2019, Amendment No. 5 to Second Amended and Restated Credit Agreement

and Waiver, dated as of June 11, 2020, and Amendment No. 6 to Second Amended and Restated Credit Agreement, dated as of July 17, 2020 (as further amended from time to time prior to the Petition Date, the "ABL Credit Agreement" and, together with the other Loan Documents, as defined in the ABL Credit Agreement, the "ABL Loan Documents"), the ABL Agent and ABL Lenders provided a $240.0 million senior secured revolving credit facility to the Debtors.

(iii)     ABL Obligations.   As of the Petition Date, the Debtors, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the ABL Agent and ABL Lenders under the ABL Loan Documents in an aggregate principal amount not less than $103,945,826.64, consisting of Loans (as defined in the ABL Credit Agreement) in the aggregate principal amount of $96,040,826.64 and Letters of Credit (as defined in the ABL Credit Agreement) in the aggregate undrawn face amount of $7,905,000.00, plus all interest accrued and accruing thereon, together with all costs, fees (including amendment fees, early termination fees, and prepayment fees), expenses (including attorneys' fees and legal expenses) and all other Obligations (as defined in the ABL Credit Agreement) accrued, accruing or chargeable in respect thereof or in addition thereto whether arising prior to or after the Petition Date (collectively, the "ABL Obligations").

(iv)     ABL Security Agreement.   In connection with the ABL Credit Agreement, the Debtors entered into that certain Security Agreement, dated as of February 3, 2015 (as amended from time to time prior to the Petition Date, the "ABL Security Agreement"), by and between the Debtors, as Grantors, and the ABL Agent. Pursuant to the ABL Security Agreement and other ABL Loan Documents, each Debtor granted senior liens on and security interests in substantially all of such Debtor's assets (the "ABL Prepetition Collateral") to the ABL Agent for the benefit of itself and the ABL Lenders as security for the ABL Obligations (the "ABL Prepetition Liens"),

junior only to the Liens of the Term Agent and Term Lenders on the Term Priority Collateral (as such term is defined in the Intercreditor Agreement (defined below)).

(v)     ABL Prepetition Liens.  The ABL Prepetition Liens granted to the ABL Agent for the benefit of itself and the ABL Lenders in the ABL Collateral pursuant to and in connection with the ABL Loan Documents, including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust, deposit account control agreements and other security documents executed by any of the Debtors in favor of the ABL Agent, (A) are valid, binding, perfected, enforceable and non-avoidable first-priority liens and security interests in the Debtors' assets, (B) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, (C) are subject and/or subordinate only to (I) certain liens securing valid, binding and non-avoidable debt that are senior by operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority to the ABL Prepetition Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the ABL Loan Documents (the "ABL Permitted Liens"), and (II) the Term Loan Prepetition Liens on the Term Loan Priority Collateral, and (D) constitute the legal, valid, and binding obligation of the Debtors, enforceable in accordance with the terms of the applicable ABL Loan Documents.

(vi)     The ABL Obligations and the ABL Loan Documents constitute the legal, valid, binding and non-avoidable obligations and agreements of the Debtors, enforceable in accordance with their terms. The ABL Obligations constitute allowed secured claims under sections 502 and 506(a) of the Bankruptcy Code. The ABL Obligations, the ABL Prepetition Liens and all payments

made in respect of and/or or applied to the ABL Obligations owing under the ABL Loan Documents prior to the Petition Date, are not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, nature or description pursuant to the Bankruptcy Code or other applicable law.

(vii)    <u>No Claims Against ABL Agent or ABL Lenders</u>.  Subject to Paragraph 18 below, the Debtors hold no valid or enforceable "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights of any kind against the ABL Agent, the ABL Lenders, and/or the ABL Collateral. Subject to Paragraph 18 below, each Debtor has forever waived and released any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights against the ABL Agent and the ABL Lenders, and each of their respective officers, directors, employees, agents, sub-agents, attorneys, consultants, advisors, and affiliates and the ABL Collateral, whether arising at law or in equity, under tort (including lender liability) or contract, including recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

(viii)    <u>Term Loan Credit Facility</u>.  Pursuant to the Term Loan Credit Agreement, dated as of March 14, 2018, by and among the Debtors, Gordon Brothers Finance Company as administrative agent and collateral agent (in such capacities, "<u>Term Agent</u>," and together with the ABL Agent, the "<u>Agents</u>"), and the lenders party thereto (the "<u>Term Lenders</u>," and together with the ABL Lenders, the "<u>Lenders</u>"), as amended by First Amendment to Term Loan Credit Agreement, dated as of May 10, 2018, Second Amendment to Term Loan Credit Agreement, dated as of September 18, 2018, Third Amendment to Term Loan Credit Agreement, dated as of February 26, 2019, Fourth Amendment to Term Loan Credit Agreement and Waiver, dated as of

-8-

June 11, 2020, and Fifth Amendment to Term Loan Credit Agreement, dated as of July 17, 2020 (as amended from time to time prior to the Petition Date, the "Term Loan Credit Agreement") and, each Loan Document (as defined in the Term Loan Credit Agreement, the "Term Loan Documents," and together with the ABL Loan Documents, the "Loan Documents"), the Term Agent and the Term Lenders provided for loans in the principal amount of $35 million.

(ix)    Term Loan Obligations. As of the Petition Date, the Debtors were indebted and liable to the Term Agent and Term Lenders under the Term Loan Documents in an aggregate principal amount not less than $36,750,000, plus all interest accrued and accruing thereon, together with all costs, fees (including amendment fees, early termination fees and prepayment fees), expenses (including attorneys' fees and legal expenses) and all other Obligations (as defined in the Term Loan Credit Agreement) accrued, accruing or chargeable in respect thereof or in addition thereto (collectively, the "Term Loan Obligations," and together with the ABL Obligations, the "Prepetition Obligations").

(x)    Term Loan Security Agreement.   In connection with the Term Loan Credit Agreement, the Debtors entered into that certain Security Agreement, dated as of March 14, 2018 (as amended from time to time prior to the Petition Date, the "Term Loan Security Agreement"), by and between Debtors, as Grantors, and the Term Agent. Pursuant to the Term Loan Security Agreement and other Term Loan Documents, each Debtor granted a security interest in substantially all of such Debtor's assets (the "Term Loan Prepetition Collateral," and together with the ABL Prepetition Collateral, the "Prepetition Collateral") to the Term Agent for the benefit of itself and the Term Lenders as security for the Term Loan Obligations (the "Term Loan Prepetition Liens," and together with the ABL Prepetition Liens, the "Prepetition Liens"), junior only to the Liens of the ABL Agent and ABL Lenders on the ABL Priority Collateral.

(xi)    <u>Term Loan Prepetition Liens</u>.  The Term Loan Prepetition Liens granted to the Term Agent for the benefit of itself and the Term Lenders in the Term Collateral pursuant to and in connection with the Term Loan Documents, including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust, deposit account control agreements and other security documents executed by any of the Debtors in favor of the Term Agent, (A) are valid, binding, perfected, enforceable and non-avoidable liens and security interests in the Debtors' assets, (B) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, (C) are subject and/or subordinate only to (I) certain liens senior by operation of law (solely to the extent such liens were valid, non-avoidable, and senior in priority to the Term Loan Prepetition Liens as of the Petition Date and properly perfected prior to the Petition Date or perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the Term Loan Documents (the "<u>Term Loan Permitted Liens</u>," and together with the ABL Permitted Liens, the "<u>Permitted Liens</u>"),[4] and (II) the ABL Prepetition Liens on the ABL Priority Collateral , and (D) constitute the legal, valid, and binding obligation of the Debtors, enforceable in accordance with the terms of the applicable Term Loan Documents.

---

[4] For the avoidance of doubt, as used in this Interim Order, no reference to the ABL Permitted Liens, the Term Loan Permitted Liens or the Permitted Liens shall refer to or include the ABL Prepetition Liens or the Term Loan Prepetition Liens.  Furthermore, nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Lien is valid, senior, enforceable, prior, perfected or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the ABL Agent, the Term Agent, the Lenders or a Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Lien.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Lien, rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the ABL Prepetition Liens and Term Loan Prepetition Liens as such claim had on the Petition Date.

(xii)    The Term Loan Obligations and the Term Loan Documents constitute the legal, valid, binding and non-avoidable obligations and agreements of the Debtors, enforceable in accordance with their terms. The Term Loan Obligations constitute allowed secured claims under sections 502 and 506(a) of the Bankruptcy Code. The Term Loan Obligations, the Term Loan Prepetition Liens and all payments made to the Term Agent or applied to the Term Loan Obligations owing under the Term Loan Documents prior to the Petition Date, are not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, nature or description pursuant to the Bankruptcy Code or other applicable law.

(xiii)    <u>No Claims Against Term Agent or Term Lenders</u>. Subject to Paragraph 18, below, the Debtors hold no valid or enforceable "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights of any kind against the Term Agent, the Term Lenders, and/or the Term Collateral. Subject to Paragraph 18 below, each Debtor has forever waived and released any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights against the Term Agent, the Term, Lenders, and each of their respective officers, directors, employees, agents, sub-agents, attorneys, consultants, advisors and affiliates and the Term Collateral, whether arising at law or in equity, under tort (including lender liability) or contract, including recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

(xiv)    <u>Intercreditor Agreement</u>.  ABL Agent and Term Agent are parties to that certain Intercreditor Agreement dated as of March 14, 2018 (as amended from time to time, the "<u>Intercreditor Agreement</u>"). The Intercreditor Agreement is a "subordination agreement"

within the meaning of Section 510(a) of the Bankruptcy Code and, among other things, (A) confirms the senior priority of the security interests of the ABL Agent in the ABL Priority Collateral (as defined in the Intercreditor Agreement) to the junior priority security interests of the Term Agent in the ABL Priority Collateral regardless of whether such Collateral exists prior to or after the Petition Date, (B) confirms the senior priority of the security interests of the Term Agent in the Term Priority Collateral to the junior priority security interests of the ABL Agent in the Term Priority Collateral (as defined in the Intercreditor Agreement) regardless of whether such Collateral exists prior to or after the Petition Date, (C) subject to certain limitations (as provided in the Intercreditor Agreement), provides that the Term Agent shall be deemed to have consented to the use of Cash Collateral by the Debtors upon notice of the ABL Agent's consent to such use of Cash Collateral, and (D) provides certain other rights and obligations between the ABL Agent, on the one hand, and the Term Agent, on the other hand, relating to the Collateral and these Cases.

F.  <u>Necessity for Relief Requested; Immediate and Irreparable Harm</u>. The Debtors requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) on the terms described herein. The Debtors have an immediate need to use the Cash Collateral to, among other things, preserve and maximize the value of the assets of each Debtor's bankruptcy estate (as defined under section 541 of the Bankruptcy Code, the "<u>Estate</u>") in order to maximize the recovery to all creditors of each Debtor's Estate, absent which immediate and irreparable harm will result to the Debtors, their Estates, and their stakeholders. Absent the Debtors' ability to use Cash Collateral, the Debtors would not have sufficient available sources of working capital or financing and would be unable to pay their payroll and other operating expenses, or maintain their assets to the detriment of their Estates and creditors. Accordingly, the relief requested in the Motion and the terms set forth herein are (i) critical to the Debtors' ability to maximize the value of the Estates,

(ii) in the best interests of the Debtors and their Estates, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and the Debtors' Estates, stakeholders, assets, goodwill, reputation, and employees.

G.   Adequate Protection.   Each of the ABL Agent, Term Agent, and Lenders are entitled to the adequate-protection provided in this Interim Order pursuant to sections 361, 362 and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate-protection arrangements and of the use of the Collateral (as defined below), including the Cash Collateral, are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral. Each of the ABL Agent, Term Agent, and Lenders reserves the right to seek other or additional adequate-protection beyond the adequate-protection provided in this Interim Order, and nothing in this Interim Order or otherwise shall be deemed or construed to limit, impair or otherwise prejudice any of the ABL Agent's or the Term Agent's rights to seek and/or obtain such other or additional adequate-protection or any other relief.

H.   Section 506(c) and 552(b).   In consideration for the ABL Agent's, Term Agent's, and Lenders' agreement to subordinate the ABL Adequate Protection Superpriority Claim, the ABL Replacement Lien, the ABL Prepetition Liens, the Term Loan Adequate Protection Superpriority Claim, the Term Loan Replacement Lien, and the Term Loan Prepetition Liens, as applicable, on the Prepetition Collateral to fund the Budget (as defined below) and the Carve Out (as defined below), in each case solely to the extent set forth in this Interim Order, the ABL Agent, the Term Agent and the Lenders are entitled, upon entry of the Final Order, to the benefits of a waiver of the provisions of Section 506(c) of the Bankruptcy Code and any "equities-of-the-case" claims under section 552(b) of the Bankruptcy Code.

I.  <u>Good Cause</u>. Good cause has been shown for immediate entry of this Interim Order, and the entry of this Interim Order is in the best interests of the Debtors, the Estates and their stakeholders. Among other things, the relief granted herein will minimize disruption of the Debtors' businesses and permit the Debtors to meet payroll and other expenses necessary to maximize the value of the Estates. The terms of the Debtors' use of Cash Collateral and proposed adequate-protection arrangements, as set forth in this Interim Order, are fair and reasonable under the circumstances, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

J.  <u>Store Closing Liquidation Agreement</u>.  Pursuant to that certain consulting agreement, entered into between Debtors, on the one hand and the contractual joint venture comprised of Hilco Merchant Resources, LLC, Gordon Brothers Retail Partners, LLC, Great American Group, LLC, Tiger Capital Group, LLC, and SB360 Capital Partners, LLC, on the other hand (collectively, the "<u>Store Closing Consultant</u>") (the "<u>Store Closing Liquidation Agreement</u>"), the Debtors have retained the Store Closing Consultant to conduct the Debtors' store-closing sales in accordance with Section 363 of the Bankruptcy Code and the Store Closing Liquidation Agreement on terms and conditions acceptable to ABL Agent and Term Agent (the "<u>Store Closing Sales</u>").  The continued existence and validity of the Store Closing Liquidation Agreement and the uninterrupted continuation of sales contemplated thereby is a condition to the consent of the ABL Agent and the Term Agent to this Interim Order and the Debtors' use of Cash Collateral hereunder.

K.  <u>Good Faith</u>.  The Debtors' use of Cash Collateral in accordance with the terms hereof has been negotiated in good faith and at arms' length among the Debtors, the ABL Agent and the Term Agent, and the consent of the ABL Agent and the Term Agent to the Debtors' use of Cash Collateral in accordance with the terms hereof shall be deemed to have been made in "good faith."

6240799.5

**BASED ON THE STIPULATED TERMS SET FORTH HEREIN, AND FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1. <u>Motion Granted</u>.  The relief requested in the Motion is GRANTED to the extent provided herein. Any objection to the entry of this Interim Order, to the extent not withdrawn, waived or resolved, is hereby overruled.

2. <u>Authorization to Use Cash Collateral</u>.  The Debtors are authorized on an interim basis to use Cash Collateral solely in accordance with and to the extent set forth in the Budget (as defined below) and this Interim Order during the period commencing on the date of this Interim Order through the Termination Date (as defined below) (the "<u>Cash Collateral Period</u>") in an amount not to exceed at any time the aggregate amount of disbursements projected in the "Total Disbursements" line item of the Budget (as defined below), subject to the applicable Permitted Variance (as defined below), from the Petition Date through the date of measurement (the "<u>Cash Collateral Limit</u>").

3. <u>Budget</u>.

(a) Debtors may use Cash Collateral during the Cash Collateral Period, subject to paragraph 3(e) herein, up to the Cash Collateral Limit only to pay the amount and type of expenses set forth in the cash-collateral budget attached as **<u>Exhibit 1</u>** hereto (as the same may be updated from time to time with the prior written consent of the ABL Agent and Term Agent, the "<u>Budget</u>") during the periods covered by the Budget in which such expenses are projected to be paid, subject to the Permitted Variance (as defined below).

(b) Not later than 3:00 p.m. (Eastern time) on the Tuesday of each week commencing on August 24, 2020, Debtors shall furnish to the ABL Agent and the Term Agent a weekly report (the "<u>Budget Compliance Report</u>") that sets forth, as of the preceding Saturday of such week, for the prior week and on a cumulative basis from the Petition Date through the third

(3rd) full week after the Petition Date and then on a rolling four (4) week basis at all times thereafter (each such reporting period, a "Cash Flow Measurement Period"), the actual results for the following line items set forth in the Budget: (i) "Total Receipts" and (ii) "Total Disbursements".

(c)    The Debtors hereby covenant and agree that (i) the actual amount of "Total Receipts" for any Cash Flow Measurement Period shall not be less than ninety percent (90%) of the amount projected in the "Total Receipts" line item of the Budget for such Cash Flow Measurement Period; (ii) the actual amount of "Total Disbursements" for any Cash Flow Measurement Period, shall not be more than one hundred and ten percent (110%) of the amount projected in the "Total Disbursements" line item of the Budget for such Cash Flow Measurement Period (individually and collectively, the "Permitted Variance"); provided that if the aggregate operating disbursements in the most recent four (4) week period are less than one hundred percent (100%) of the aggregate amount projected in the Budget for such disbursements during such four (4) week period (the amount by which such disbursements are less than one hundred percent (100%) being a "Disbursement Carryover Amount"), such Disbursement Carryover Amount shall be included for purposes of the Permitted Variance for the immediately succeeding Cash Flow Measurement Period commencing after the end of such four (4) week period (but not for any Cash Flow Measurement Period thereafter).

(d)    The ABL Agent and Term Agent in their sole discretion, may agree in writing (which writing may be in e-mail) to the use of the Cash Collateral (i) in a manner or amount which does not conform to the Budget (other than Permitted Variances) (each such approved non-conforming use of Cash Collateral, a "Non-Conforming Use") or (ii) for a period following the Termination Date pursuant to paragraph 5 of this Interim Order (such period, the

"Subsequent Budget Period"). If such written consent is given by both the ABL Agent and the Term Agent, the Debtors shall be authorized pursuant to this Interim Order to expend Cash Collateral for any such Non-Conforming Use or any such Subsequent Budget Period in accordance with a subsequent Budget (a "Subsequent Budget") without further Court approval, and the ABL Agent, Term Agent, and Lenders shall be entitled to all of the protections specified in this Interim Order for any such use of Cash Collateral; *provided* that each such permitted Non-Conforming Use shall be deemed a modification to the Budget for all testing purposes. The Debtors shall provide notice of any Non-Conforming Use, Subsequent Budget Period, and Subsequent Budget to the United States Trustee and the Committee, if any.

(e)      During any Stay Relief Notice Period (as defined herein), the Debtors may only use Cash Collateral to pay the following amounts and expenses solely in accordance with the respective Budget line items in the amounts set forth in the Budget for the week in which such Stay Relief Notice Period occurs: (i) the Carve Out (as defined herein); (ii) obligations for unpaid and accrued payroll and payroll taxes; (iii) sales taxes; and (iv) any such other obligations subject to the prior written consent (which written consent may be in e-mail) of the ABL Agent and Term Agent.

4.      Carve Out.

(a)      Carve Out. As used in this Interim Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate through the Termination Declaration Date (defined below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) all unpaid fees and expenses allowed at any time by this Court (the "Allowed Professional Fees")

incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the last day of the week in which a Carve Out Trigger Notice (as defined below) is served, provided, that the amount of Allowed Professional Fees included in this clause (iii) of the Carve Out (I) shall not at any time exceed the aggregate amount of the fees and expenses identified in the Budget for each such Professional Person or category of Professional Persons covering the period of time commencing on the Petition Date through the earlier of (A) the date of determination, and (B) the last day of the week in which a Carve Out Trigger Notice (defined below) is served, and (II) shall be permanently reduced with respect to each Professional Person by the aggregate amount of professional fees and expenses actually received by such Professional Person following the Petition Date (the amount set forth in this clause (iii), the "Professional Fee Carve-Out Cap"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by the ABL Agent—or, following the ABL/Term Loan Toggle Date, by the Term Agent—of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or other order of this Court (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the ABL Agent—or, following the ABL/Term Loan Toggle Date, by the Term Agent— to the Debtors, their lead restructuring counsel, the U.S. Trustee, and lead counsel to any Committee, which notice may be delivered following the occurrence and during the continuation

-18-

of a Termination Event, respectively, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)     Fee Estimates.  Not later than 7:00 p.m. New York time on the Wednesday of each week starting with the second full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors, ABL Agent and Term Agent a statement setting forth (i) a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date") (collectively, "Estimated Fees and Expenses"), (ii) the total amount of fees and expenses that have been paid to date by the Debtors to each Professional Person, and (iii) the total amount of the Carve Out as of such time, as well as the total balance in each of the Carve Out Reserves (as defined below) (each such statement, a "Weekly Statement"); *provided*, that within three business days of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date.

(c)     Carve Out Reserves.

(i)     On or before the Thursday of each week, Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve account in an amount equal to the lesser of (A) the aggregate unpaid amount of Estimated Fees and Expenses included in the most recent Weekly Statements delivered in accordance with subparagraph 4(b) above, and (B) the projected amount of Allowed Professional Fees set forth in the Budget for the week in which such Estimated Fees and Expenses were incurred; provided, that

6240799.5

in the event a professional fails to timely deliver a Weekly Statement in accordance with subparagraph 4(b) above, upon receipt by Debtors, ABL Agent, and Term Agent of a Weekly Statement (or revised Weekly Statement) from a prior period, the Debtors are authorized to utilize cash on hand to fund amounts in respect of such delinquent Weekly Statement up to lesser of the amounts provided in clauses (A) and (B) above for the week covered by such delinquent Weekly Statement. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Pre-Carve Out Trigger Notice Reserve. Upon the foregoing weekly funding, the Debtors' authorization to use Cash Collateral to fund the Carve Out Reserves on account of, and the liens and claims of the Agents and Lenders shall cease being subordinated to the Carve Out with respect to any Allowed Professional Fees incurred through the Calculation Date for the most recent Weekly Statement delivered in accordance with Section 4(b) above.

(ii)    On the day on which a Carve Out Trigger Notice is given by the ABL Agent—or, following ABL/Term Loan Toggle Date, by the Term Agent— to counsel for the Debtors and the Committee (the "Termination Declaration Date"), the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund (A) the Pre-Carve Out Trigger Notice Reserve in an amount equal to the sum of (x) the amounts set forth in paragraphs (a)(i) and (a)(ii), above, plus (y) amount equal to the aggregate amount of all Estimated Fees and Expenses reflected in the Final Statements timely delivered by Debtors to the ABL Agent and Term Agent, provided that such amount shall not exceed the Professional Fee Carve Out Cap; and (B) a segregated reserve account in an amount equal to the Post-Carve Out Trigger Notice Cap

(the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice

Reserve, collectively the "Carve Out Reserves"), which amounts shall be held in trust to pay such

Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap, subject to the

terms and conditions contained in this Interim Order.

(d)    Application of Carve Out Reserves.

(i)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used

first to pay the obligations set forth in subparagraphs (a)(i) through (a)(iii) of the definition of

Carve Out set forth above (the "Pre-Carve Out Trigger Amounts"), but not, for the avoidance of

doubt, any Allowed Professional Fees incurred after the date of the Carve Out Trigger Notice.  If

the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero following the payment of

all amounts set forth in subparagraphs (a)(i) through (a)(iii) of the definition of Carve Out incurred

on or before the Carve Out Trigger Notice, then all remaining funds shall be distributed (x) first to

the ABL Agent for the benefit of itself and the ABL Lenders until the ABL/Term Loan Toggle

Date,[5] (y) then to the Term Agent for the benefit of itself and the Term Lenders, until all Term

Loan Obligations have been Paid in Full,[6] and (z) then any excess shall be paid to the Debtors'

creditors in accordance with their rights and priorities as of the Petition Date.

---

[5] As used herein, "ABL/Term Loan Toggle Date" means the date on which the ABL Agent receives payment in cash of all outstanding ABL Obligations (including principal, interest, fees, early termination fees, prepayment premiums, expenses, indemnities, and the cash collateralization of any letters of credit and other contingent obligations, in each case, in such amount as the ABL Agent may reasonably require.

[6] All references to "payment in full" or "Payment in Full" or "paid in full" or "Paid in Full" with respect to the ABL Obligations or Term Loan Obligations, as the case may be, means the indefeasible repayment in full in cash of all such obligations (including principal, interest, fees, expenses, and indemnities), except that for contingent obligations it shall include arrangements and amounts reasonably satisfactory to the applicable Agent or Lender, whether in the form of cash collateral or a backstop letter of credit, and including in any event in addition to such arrangements as to letters of credit and similar instruments, treasury and cash management obligations, hedging obligations and other bank product obligations, the pledge of cash collateral in such amounts as the applicable agent, lender or issuing bank may reasonably require to secure any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the applicable Agents and Lenders, in each case, in accordance with the terms of the applicable Loan Document (it being understood that the reference to cash collateral herein under the ABL Credit Agreement or the Term Loan Credit Agreement means the pledge and deposit with and delivery to ABL Agent or Term Agent, as the case may be, as collateral for the obligations specified above in such amounts as ABL Agent or Term Agent, as the

-21-

(ii)    All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the Allowed Professional Fees incurred after the first day following the delivery of a Carve Out Trigger Notice in an amount not to exceed the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Amounts").  If the Post Carve Out Trigger Notice Reserve has not been reduced to zero following the payment of all Allowed Professional Fees incurred after the date of the Carve Out Trigger Notice, then all remaining funds shall be distributed (x) first to the ABL Agent for the benefit of itself and the ABL Lenders until the ABL/Term Loan Toggle Date, (y) then to the Term Agent for the benefit of itself and the Term Lenders, until all Term Loan Obligations have been Paid in Full; and (z) then any excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the Loan Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, none of the Agents or Lenders shall be entitled to any cash (including cash received from the sale or other disposition of any of the Debtors' assets) until the Post-Carve Out Trigger Reserve Account is fully funded.

---

case may be, determines pursuant to documentation in form and substance reasonably satisfactory to ABL Agent or Term Agent, as applicable) and that ABL Agent and the ABL Lenders, or Term Agent and the Term Lenders, as the case may be, shall receive a release from each Debtor and any Committee of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities (including, without limitation any obligations or liabilities of any kind related to the Carve Out upon payment in full of the ABL Obligations or Term Loan Obligations) in form and substance acceptable to ABL Agent or Term Agent, as applicable or in the case of the Committee, instead of such release, (A) if the Challenge Period (as defined in this Interim Order) has not elapsed, a written notice or other confirmation that no Challenge or any other claims of any kind (including with respect to the Carve Out upon payment in full of the ABL Obligations or Term Loan Obligations) will be asserted or (B) if the Challenge Period has elapsed, then no Challenge or any other claim has been asserted or any Challenge or other claim asserted has been dismissed pursuant to a final, non-appealable order of a court of competent jurisdiction and a written notice or other confirmation that no claim of any kind with respect to the Carve Out will be asserted. Upon indefeasible payment in full of (i) the ABL Obligations, in the first instance and (ii) the Term Loan Obligations, in the second instance, the limitations on the use of Cash Collateral set forth in Section 3 shall be of no further force and effect and the Company Parties shall have no further obligations to the ABL Agent and the Term Agent, as applicable, with respect to the Budget, cash management and reporting under this Interim Order.

6240799.5

(iii)    Notwithstanding anything to the contrary, subject to the limitations set forth herein with respect to the Agents and Lenders (including their liens and claims), in no way shall the Budget, any amended Budget approved by the ABL Agent and Term Agent, the Carve Out, the Post-Carve Out Trigger Notice Cap or Carve Out Reserves be construed as a cap or limitation on the amount of the Allowed Professional Fees otherwise due and payable by the Debtors in accordance with the Bankruptcy Code.

(e)    For the avoidance of doubt, the Carve Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, any party's claims under section 507(b) of the Bankruptcy Code, as well as any and all other forms of adequate-protection, liens, or claims securing the Prepetition Obligations, in each case solely to the extent provided herein.

(f)    No Direct Obligation To Pay Allowed Professional Fees. The Agents and Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the Agents and Lenders in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Payment from the Carve Out, whether by or on behalf of the Agents or Lenders, shall not and shall not be deemed to reduce the Obligations, and shall not and shall not be deemed to subordinate any of any of Agents' or Lenders' liens and security interests in the Prepetition Collateral, any other Collateral, the ABL Adequate Protection Superpriority Claim or the Term Loan Adequate Protection Superpriority Claim (as defined below) to any junior pre- or post-petition lien, interest or claim in favor of any other party.  Nothing in

-23-

Section 4 of this Interim Order shall be construed to obligate the Agents or any Lender in any way, to directly pay compensation to or to reimburse expenses of any Professional Person, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

(g)    Payment of Carve Out.  Any payment or reimbursement made in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

(h)    Nothing herein, including the inclusion of line items in the Budget for Professional Persons, shall be construed as consent to the allowance of any particular professional fees or expenses of the Debtors, any Committee, or of any other person or shall affect the right of the ABL Agent, the Term Agent and any Lenders to object to the allowance and payment of such fees and expenses. Furthermore, nothing in this Interim Order or otherwise shall be construed: (i) to obligate the ABL Agent, Term Agent or other Lenders in any way to pay compensation to or to reimburse expenses of any Professional Person, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; or (ii) to increase the Carve Out if allowed fees and/or disbursements are higher in fact than the amounts subject to the Carve Out as set forth in this Interim Order.

5.    Termination Date.

(a)    Immediately upon written notice by the ABL Agent or Term Agent, to the Debtors, the U.S. Trustee and, if appointed, any Committee, the Debtors' authorization (an "Enforcement Notice"), and the ABL Agent's and the Term Agent's consent for the Debtors to use Cash Collateral pursuant to this Interim Order shall terminate on the earliest to occur of the following (the earliest such date, herein defined as the "Termination Date"): (i) the Debtors' failure to satisfy any Milestone (defined below) set forth in paragraph 28; (ii) the entry of an order of this Court terminating the right of any Debtor to use Cash Collateral; (iii) the dismissal of any of the

Cases or the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code; (iv) the appointment in any of the Cases of a trustee or an examiner with expanded powers; (v) the entry of any order of the Court that impairs in any way the security interests, liens, priority claims or rights granted to the ABL Agent or the Term Agent under the terms of this Interim Order; (vi) this Interim Order shall cease, for any reason, to be in full force and effect, or the Debtors shall so assert in writing, or any liens or claims created in favor of the ABL Agent or the Term Agent under this Interim Order shall cease to be enforceable and of the same effect and priority purported to be created hereby, or the Debtors shall so assert in writing; (vii) any of the Debtors challenge or object to the extent, validity, enforceability, priority, perfection and/or non-avoidability of the Prepetition Obligations (or any portion thereof) or the ABL Agent's and the Term Agent's security interests in and liens upon the Collateral; (viii) an order of this Court shall be entered reversing, staying, vacating or otherwise modifying this Interim Order or any provision contained herein without the prior written consent (which consent may be in e-mail) of the ABL Agent and the Term Agent; (ix) the actual amount of (A) "Total Receipts"; or (B) "Total Disbursements" in any Cash Flow Measurement Period deviates beyond the Permitted Variance as set forth in Paragraph 3(c) hereof from the amounts set forth in the Budget for such Cash Flow Measurement Period, without, in each instance, the prior written consent of the ABL Agent and the Term Agent; (x) any Debtor fails to pay in full the Prepetition Obligations or any other amounts due to the Agents and Lenders in accordance with the terms set forth in this Interim Order, without the prior written consent (which writing may be in e-mail) of the ABL Agent or the Term Agent, as applicable; (xi) any material misrepresentation by any Debtor in the financial reporting or certifications to be provided by the Debtors to the ABL Agent or the Term Agent under the Loan Documents and/or this Interim Order; (xii) any of the Debtors propose or support any plan of reorganization or sale of all or

6240799.5

substantially all of any Debtor's assets or entry of any order confirming any such plan or sale that is not conditioned on the payment in full in cash, on the effective date of such plan or sale, of all Prepetition Obligations; (xiii) the Debtors fail to provide any additional adequate-protection ordered by the Court and such failure shall continue unremedied for more than three (3) business days after written notice thereof; (xiv) any Debtor files a plan of reorganization prior to Payment in Full of all ABL Obligations without the prior written consent of ABL Agent; (xv) any Debtor's failure to perform, in any respect, any of its material obligations under this Interim Order; (xvi) the termination or resignation of either the Store Closing Consultant (as defined below) without the prior written consent of the Agents; or (xvii) any Debtor, including any subsidiary or affiliate thereof, promotes or otherwise markets discounting of Collateral offered for sale at any store location other than in the normal course of business without ABL Agent's prior written consent, (xviii) failure by the Debtors to comply with the Budget, subject to Permitted Variances, without the prior written consent of the Agents; (xix) the entry of an order in the Cases charging any of the Collateral under sections 506(c) or 552(b) of the Bankruptcy Code against any of the Agents or Lenders under which any person takes action against the Collateral or that becomes a final non-appealable order, or the commencement of other actions that are materially adverse to any of the Agents or Lenders or their respective rights and remedies under the Loan Documents in the Cases (or any order requiring any of the Agents or Lenders to be subject to the equitable doctrine of "marshaling"); (xx) without the prior written consent of the Agents, the obtaining after the Petition Date of credit or the incurring of indebtedness that is, in each case, (A) secured by a security interest, mortgage or other lien on all or any portion of the Collateral that is equal or senior to any security interest, mortgage or other lien of the Agents, including, without limitation, any Replacement Lien; or (B) entitled to priority administrative status that is equal or senior to that

granted to the Agents, including, without limitation, the ABL Adequate Protection Superpriority Claim or the Term Loan Adequate Protection Superpriority Claim; (xxi) without the prior written consent of the Agents, the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow any creditor to execute on or enforce a lien on or security interest in (A) any inventory, other than inventory subject to a lien senior to liens or security interests of the Agents, or (B) in any other Collateral that is senior to any liens or security interests of the Agents having a value in any one case or in the aggregate for all such Collateral greater than $100,000; or (xxii) without the prior written consent of the Agents the termination, discontinuation or suspension of the Store Closing Sales (defined below) at any of the Debtors' store locations or through any of their e-commerce platforms (each of the forgoing, a "<u>Termination Event</u>").

(b)    Notwithstanding anything set forth herein or otherwise to the contrary, Term Agent shall not issue an Enforcement Notice (as defined above) or take any steps to commence an Enforcement Period (as defined in the Intercreditor Agreement) without the prior written consent of the ABL Agent until the ABL/Term Loan Toggle Date.

6.    <u>Adequate Protection.</u>

(a)    <u>Replacement Liens</u>.

(i)    *<u>ABL Replacement Lien</u>*.    Subject to the Carve Out and the Intercreditor Agreement, as adequate-protection for and solely to the extent of the amount of diminution in value from and after the Petition Date, of its interests in the Collateral, including, without limitation, the aggregate amount of Cash Collateral used by any Debtor on a dollar-for-dollar basis, the imposition of the automatic stay, the subordination to and funding of the Carve Out to the extent set forth herein, and any other act or omission that

-27-

causes diminution in the value of its interests in the Collateral (collectively, the "Diminution in Value"), the ABL Agent, for the benefit of itself and the ABL Lenders is hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all of each Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired by such Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof, including, without limitation, the proceeds from any sale, termination, or other disposition of any leasehold interests of the Debtors and, subject only to the entry of a Final Order (collectively, to the extent acquired after the Petition Date, the "ABL Postpetition Collateral" and, together with the Prepetition Collateral and the Cash Collateral, the "ABL Collateral") to the extent of any Diminution in Value (the "ABL Replacement Lien"); provided, that, upon the entry of the Final Order, the ABL Replacement Lien shall attach to property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code. The ABL Replacement Lien shall be junior and subordinate only to (A) liens of the Term Agent in the Term Priority Collateral and the proceeds of the Debtors' real property leases, (B) the ABL Prepetition Liens on the Prepetition Collateral, and (C) the Carve Out, and shall otherwise be senior to all other security interests in, liens on, or claims against any asset of a Debtor and all rights of payment of all other parties. Other than as set forth herein, the ABL Replacement Lien shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in any of the Cases or any Successor Case. The ABL

-28-

Replacement Lien shall be valid, binding and enforceable against any trustee or other estate representative appointed in any Case, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (collectively, "Successor Cases") and/or upon the dismissal of any Case or Successor Case. For the avoidance of doubt, the ABL Replacement Lien shall not include any leasehold interests of the Debtors but shall include the proceeds from any sale, termination, or other disposition of any leasehold interests of the Debtors.

(ii)    *Term Loan Replacement Lien*. Subject to the Carve Out and the Intercreditor Agreement, as adequate-protection for and solely to the extent of the amount of diminution in value from and after the Petition Date of its interests in the Collateral, including, without limitation, the aggregate amount of Cash Collateral used by any Debtor on a dollar-for-dollar basis, the imposition of the automatic stay and any other act or omission which causes diminution in the value of its interests in the Term Priority Collateral (collectively, the "Term Diminution in Value"), the Term Agent, for the benefit of itself and the Term Lenders, is hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all of the each Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired by such Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof, including, without limitation, the proceeds from any disposition of any leasehold interests of the Debtors and, subject only to the entry of a Final Order and all valid and existing encumbrances, all leasehold interests of the Debtors (collectively, to the extent acquired after the Petition Date, the "Term Loan Postpetition

Collateral" and, together with the Term Priority Collateral and the Cash Collateral, the "Term Loan Collateral") to the extent of any Term Diminution in Value (the "Term Loan Replacement Lien"); provided, that, (1) for purposes of this Interim Order, the Term Loan Replacement Lien shall not attach to the Debtors' real property leases but only to the proceeds, products, and offspring of such real property leases, and (2) upon entry of the Final Order, the Term Loan Replacement Lien shall attach to property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code. The Term Loan Replacement Lien shall be junior and subordinate only to (A) liens of the ABL Agent on the ABL Priority Collateral, (B) the Term Loan Prepetition Liens on the Term Loan Prepetition Collateral, and (C) the Carve Out, and shall otherwise be senior to all other security interests in, liens on, or claims against any asset of a Debtor and all rights of payment of all other parties. Other than as set forth herein, the Term Loan Replacement Lien shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in any of the Cases or any Successor Case.  The Term Loan Replacement Lien shall be valid, binding and enforceable against any trustee or other estate representative appointed in any Case or Successor Case and/or upon the dismissal of any Case or Successor Case.  For the avoidance of doubt, the Term Loan Replacement Lien shall not include any leasehold interests of the Debtors until entry of a Final Order but shall include the proceeds from any sale, termination, or other disposition of any leasehold interests of the Debtors.

(b)     Default Interest.  At all times during the Cases, interest on all outstanding Prepetition Obligations shall bear interest at the applicable Default Rate (as defined and set forth

in the ABL Credit Agreement and the Term Loan Credit Agreement, as applicable). The Debtors shall make adequate-protection payments to the Agents of interest and letter-of-credit fees (if any) on a monthly basis at such rate.

(c)     Section 507(b) Priority Claims.

(i)     *ABL Adequate Protection Superpriority Claim*. Subject only to the Carve Out and the Intercreditor Agreement, as adequate-protection for the Diminution in Value of its interest in the Collateral the ABL Agent, for the benefit of itself and the ABL Lenders, is hereby granted as and to the extent provided by Sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative-expense claim in the Cases and any successor bankruptcy case (the "ABL Adequate Protection Superpriority Claim"). The ABL Adequate Protection Superpriority Claim shall be subordinate to the Carve Out solely to the extent set forth in this Interim Order, but otherwise shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against each Debtor and each Estate now existing or hereafter arising, of any kind or nature whatsoever.

(ii)     *Term Loan Adequate Protection Superpriority Claim*. As adequate-protection for the Term Diminution in Value of its interest in the Collateral, the Term Agent, for the benefit of itself and the Term Lenders, is hereby granted as and to the extent provided by Sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases and any successor bankruptcy case (the "Term Loan Adequate Protection Superpriority Claim"). The Term Loan Adequate Protection Superpriority Claim shall be subordinate to (A) the Carve Out solely to the extent set forth

-31-

in this Interim Order, and (B) the ABL Adequate Protection Superpriority Claim to the extent set forth in the Intercreditor Agreement, but otherwise shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against each Debtor and each Estate now existing or hereafter arising, of any kind or nature whatsoever.

(d)    Mandatory Paydowns of Obligations.

(i)    Payment of ABL Obligations.    Commencing Friday, August 21, 2020, and continuing on each Friday thereafter until the ABL/Term Loan Toggle Date, the ABL Agent is hereby authorized and directed to transfer to the ABL Agent (and the Debtors at the direction of the ABL Agent shall initiate such transfer) all cash then on deposit in the Debtors' deposit accounts in excess of $5,000,000 (the "Excess Proceeds"), such Excess Proceeds to be thereupon applied in permanent reduction and repayment of the Obligations (as defined in the ABL Credit Agreement) in accordance with the terms of the ABL Loan Documents and this Interim Order; provided, the foregoing payments shall be without prejudice to the rights of any third party, including, without limitation, any Committee, to seek an appropriate remedy from the Court upon appropriate notice to the ABL Agent and the ABL Lenders, solely in accordance with and to the extent set forth in Section 18(b).

(ii)    Payment of Term Loan Obligations.    Commencing on the first Friday following the ABL/Term Loan Toggle Date and continuing on each Friday thereafter until the Payment in Full of all Term Loan Obligations, the Debtors shall initiate a transfer of all Excess Proceeds to the Term Agent (and the ABL Agent is hereby

-32-

authorized to initiate such transfer upon direction from the Debtors or Term Agent), such Excess Proceeds to be thereupon applied in permanent reduction and repayment of the Term Loan Obligations in accordance with the terms of the Term Loan Documents and this Interim Order; provided, the foregoing payments shall be without prejudice to the rights of the any third party, including, without limitation, any Committee, to seek an appropriate remedy from the Court upon appropriate notice to the Term Agent and the Term Lenders, solely in accordance with and to the extent set forth in Section 18(b).

(e)     Additional Payments from Sale of Collateral.  Notwithstanding anything to the contrary set forth herein, in the Budget, or in any other order entered in these Cases, subject to the terms of the Intercreditor Agreement if the ABL Agent and other ABL Lenders have not received the indefeasible payment in full of all Obligations (as defined in the ABL Credit Agreement) on or before October 2, 2020, then the Debtors shall repay (i) to the ABL Agent for itself and the benefit of the other ABL Lenders, all unpaid Obligations (as defined in the ABL Credit Agreement) that are or which may become due and payable pursuant to the ABL Loan Documents, and (ii) following the ABL/Term Loan Toggle Date, to the Term Agent for itself and the benefit of the other Term Lenders, all unpaid Obligations (as defined in the Term Loan Credit Agreement) that are or which may become due and payable pursuant to the Term Loan Documents, in each case on a daily basis from the net sale proceeds generated from any sales, dispositions, or proceeds of casualty insurance of all Collateral outside the ordinary course of Debtors' businesses, including sales or dispositions of Collateral with respect to all "going-out-of-business" sales and all other sales of Collateral pursuant to section 363 of the Bankruptcy Code until all Prepetition Obligations are Paid in Full in accordance with the Prepetition Documents and Intercreditor Agreement. All of the ABL Agent's and ABL Lenders' rights under the ABL Loan Documents

with regard to the Obligations (as defined in the ABL Credit Agreement) and otherwise are by this Interim Order expressly reserved and preserved.

(f)    <u>Letters of Credit</u>.  ABL Agent is hereby authorized to (i) maintain Cash Collateral in an amount equal to one hundred and five percent (105%) of all LC Obligations (as defined in the ABL Credit Agreement); and (ii) apply such Cash Collateral, or any portion thereof, immediately upon any draw on any Letter of Credit (as defined in the ABL Credit Agreement).

(g)    <u>Disposition of Collateral</u>.  Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral outside the ordinary course of business, other than in connection with the Store Closing Liquidation Agreement as in effect and in the manner such agreement is implemented as of the Petition Date, without the prior written consent (which writing may be e-mail) of the ABL Agent with respect to the ABL Priority Collateral and the Term Agent with respect to the Term Priority Collateral (and no such consent shall be implied, from any other action, inaction or acquiescence by each applicable Agent) to such disposition and the terms thereof, and (ii) in each case, an order of this Court.

(h)    <u>Payment and Review of Lender Fees and Expenses</u>.  As further adequate-protection, the Debtors shall pay all fees and expenses under the Loan Documents, including, without limitation, the non-refundable payment to the ABL Agent and the Term Agent of the reasonable and documented attorney fees and expenses and any other professional fees and expenses whether incurred before or after the Petition Date and whether incurred in connection with the Loan Documents, the Collateral, or the Cases; <u>provided</u> that Debtors shall pay all such reasonable fees and expenses within five (5) business days of delivery of a summary statement or invoice for such fees and expenses (it being understood that such statements or invoices shall not be required to be maintained in any particular format, nor shall any such counsel or other

-34-

professional be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such payments) to the Debtors, the U.S. Trustee and the Committee (if one is appointed), unless, within such five (5) business-day period, the Debtors, the U.S. Trustee or the Committee (if one is appointed) serves a written objection on the requesting party, in which case, the Debtors shall pay only such amounts that are not the subject of any objection and the withheld amount subsequently agreed by the objecting parties or ordered by the Court to be paid. Any and all amounts paid by the Debtors pursuant to this subparagraph 6(h) are deemed permitted uses of Cash Collateral and not subject to the Budget, the Budget Compliance Report, or Permitted Variance. Notwithstanding the foregoing, the Debtors are authorized to pay upon entry of this Interim Order all reasonable and documented fees, costs and out-of-pocket expenses of the ABL Agent and Term Agent incurred on or prior to such date without the need for any professional engaged by the ABL Agent or Term Agent to first deliver a copy of its invoice as provided herein. No attorney or advisor to any ABL Agent or Term Agent shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

(i)     _Cash Management_. Until the indefeasible Payment in Full of the Prepetition Obligations, the ABL Agent shall transfer on a daily basis all cash collected in the Debtors' concentration account(s) to the Debtors' operating account (the "_Operating Account_") for use in funding disbursements in accordance with the Budget (subject to Permitted Variances) and as otherwise provided in this Interim Order. Until ABL Agent receives Payment in Full of the ABL Obligations, (A) ABL Agent shall have, and continue to have, exclusive dominion and control on all deposit accounts and other accounts of Debtors and all banks, depository entities, securities intermediaries and commodities intermediaries that are parties to any Blocked Account Agreements (as defined in the ABL Credit Agreement) shall be authorized and directed to continue

-35-

affording ABL Agent with exclusive dominion and control over such accounts in accordance with the terms and conditions of the applicable Blocked Account Agreements, all of which agreements are hereby ratified and authorized in accordance with their respective terms; and (B) prior to the Termination Date, ABL Agent shall hold, and not apply to repay the ABL Obligations except as otherwise set forth in the Interim Order, all Cash Collateral actually received by ABL Agent, and shall remit such Cash Collateral so received to the Debtors in accordance with this Interim Order; provided, that subject to paragraph 18(b), ABL Agent shall be authorized on and after the Termination Date (X) to apply any and all Cash Collateral on hand or thereafter received by ABL Agent against the ABL Obligations for permanent application against such debt without further notice to the Debtors or any other party; and (Y) following Payment in Full of all ABL Obligations, to transfer any and all Cash Collateral on hand or thereafter received by ABL Agent to the Term Agent for permanent application against the Term Loan Obligations without further notice to the Debtors or any other party.  Notwithstanding the foregoing, the Debtors shall cause the proceeds of Term Priority Collateral to be deposited into a segregated, non-commingled account which is required to be subject to the control of the Term Agent (and, following the Payment in Full of the Term Loan Obligations, the ABL Agent) and, until the Prepetition Obligations are Paid in Full, the proceeds of Term Priority Collateral shall be applied (and the Debtors and Agents are authorized to apply such proceeds) on a weekly basis beginning on the first week after the Petition Date, first to the Term Loan Obligations until paid in full and then to the ABL Obligations until paid in full.

(j)     Consent & Administration Fee. In consideration for the Agents' consent to the use of their Cash Collateral in accordance with the terms of this Interim Order and continued maintenance of the Debtors' cash management system, (1) the ABL Agent shall be paid, in

-36-

addition to all other Obligations (as defined in the ABL Credit Agreement) owing by Debtors to ABL Agent and ABL Lenders, a weekly fee in the amount of $125,000 until the ABL Obligations are Paid in Full (the "ABL Administration Fee"), and (2) the Term Agent shall be paid, in addition to all other Term Loan Obligations, a weekly fee in the amount of $50,000 until the Term Loan Obligations are Paid in Full (the "Term Administration Fee," and together with the ABL Administration Fee, the "Administration Fees"). The Administration Fees shall be fully earned and payable on Monday of each week. The Administration Fees shall be part of the Prepetition Obligations, as applicable. Notwithstanding anything to the contrary set forth herein, the ABL Agent and the Term Agent are hereby authorized to apply any Cash Collateral on hand at any time to the permanent payment of the Administration Fees without further notice to the Debtors or any other party.

(k)      ABL Prepetition Indemnity Reserve.  Upon the payment in cash to the ABL Agent in the amount of all then outstanding ABL Obligations, the Debtors are further authorized and directed to pay to the ABL Agent, for the benefit of the ABL Lenders, $250,000 into a non-interest bearing account maintained at Wells Fargo Bank, N.A. (the "Prepetition ABL Indemnity Reserve") to secure contingent indemnification, reimbursement, or similar continuing obligations arising under or related to the ABL Loan Documents (the "Prepetition ABL Indemnity Obligations").  The Prepetition ABL Indemnity Reserve shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) owed to or incurred by the ABL Agent related to the ABL Loan Documents, the ABL Obligations, or the ABL Prepetition Liens granted to the ABL Agent, as applicable, whether in these Cases or independently in another forum, court, or venue.  The Prepetition ABL Indemnity Obligations shall be secured, and not subject to the Carve Out, by a first lien on the Prepetition ABL Indemnity Reserve and the funds

-37-

therein and by a lien on the ABL Collateral (subject in all respects to the Intercreditor Agreement and this Interim Order). Payments of Prepetition ABL Indemnity Obligations shall be made as and when they arise and paid with the Prepetition ABL Indemnity Reserve, without further notice to or consent from the Debtors, any committee (if appointed), or any other parties in interest and without further order of this Court. The ABL Agent (for itself and on behalf of the ABL Lenders) shall retain and maintain the ABL Prepetition Liens and the ABL Replacement Lien granted to the ABL Agent as security for the amount of any Prepetition ABL Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition ABL Indemnity Reserve. The Prepetition ABL Indemnity Reserve shall be released to the Debtors at such time as the ABL Obligations are Paid in Full.

(l)     Term Loan Prepetition Indemnity Reserve. Upon the payment in cash to the Term Agent in the amount of all then outstanding Term Loan Obligations, the Debtors are further authorized and directed to pay to the Term Agent, for the benefit of the Term Lenders, $250,000 into a non-interest bearing account maintained at [Wells Fargo Bank, N.A.] (the "Prepetition Term Indemnity Reserve") to secure contingent indemnification, reimbursement, or similar continuing obligations arising under or related to the Term Loan Documents (the "Prepetition Term Indemnity Obligations"). The Prepetition Term Indemnity Reserve shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) owed to or incurred by the Term Agent related to the Term Loan Documents, the Term Loan Obligations, or the Term Loan Prepetition Liens granted to the Term Agent, as applicable, whether in these Cases or independently in another forum, court, or venue. The Prepetition Term Indemnity Obligations shall be secured, and not subject to the Carve Out, by a first lien on the Prepetition Term Indemnity Reserve and the funds therein and by a lien on the Term Loan

Collateral (subject in all respects to the Intercreditor Agreement and this Interim Order).  Payments of Prepetition Term Indemnity Obligations shall be made as and when they arise and paid with the Prepetition Term Indemnity Reserve, without further notice to or consent from the Debtors, any committee (if appointed), or any other parties in interest and without further order of this Court.  The Term Agent (for itself and on behalf of the Term Lenders) shall retain and maintain the Term Loan Prepetition Liens and the Term Loan Replacement Lien granted to the Term Agent as security for the amount of any Prepetition Term Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition Term Indemnity Reserve.  The Prepetition Term Indemnity Reserve shall be released to the Debtors at such time as the Term Loan Obligations are Paid in Full.

(m)    Notwithstanding anything to the contrary set forth herein, the adequate-protection granted by this Interim Order is without prejudice to the ABL Agent's and the Term Agent's rights to seek additional adequate-protections from this Court. The use of Cash Collateral pursuant to the terms and conditions of this Interim Order and in accordance with the Budget shall not be deemed to be a consent by the ABL Agent or the Term Agent to any other or further use of Cash Collateral or to the use of any Cash Collateral in any amount or for any purpose in excess of the amount set forth in the Budget for each such type of disbursement or otherwise approved herein.

7.    <u>Insurance.</u> At all times the Debtors shall maintain casualty and loss insurance coverage for the Collateral on substantially the same basis as maintained prior to the Petition Date. The Debtors shall provide the ABL Agent and the Term Agent with proof of the foregoing within five (5) days of written demand and give the ABL Agent and Term Agent reasonable access to Debtors' records in this regard.

8.      <u>Proof of Claim</u>. Notwithstanding any notice, motion or any order entered by this Court in relation to the establishment of a bar date in any of the Cases or any Successor Case to the contrary, the ABL Agent and Term Agent will not be required to file proofs of claim or requests for approval of administrative expenses in any Case or Successor Case. The acknowledgment by Debtors of the Prepetition Obligations and the liens, rights, priorities and protections granted to or in favor of the ABL Agent and the Term Agent in respect of the Prepetition Collateral as set forth herein and in the Loan Documents shall be deemed a timely filed proof of claim on behalf of the ABL Agent and the Term Loan, as applicable, in each of the Cases or Successor Cases.

9.      <u>Relief from the Automatic Stay</u>.

(a)      The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit (i) the Debtors to implement and perform the terms of this Interim Order, (ii) the Debtors to create, and the ABL Agent to perfect, the ABL Replacement Lien and other Liens granted hereunder, and (iii) the Debtors to create, and the Term Agent to perfect, the Term Loan Replacement Lien and other Liens granted hereunder. The ABL Agent and the Term Agent shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect the Liens, including the ABL Replacement Lien and the Term Loan Replacement Lien, granted by this Interim Order or to take any other actions to perfect such Liens, which shall be deemed automatically perfected by the docketing of this Interim Order by the Clerk of the Court, and deemed to be effective as of the Petition Date. If, however, the ABL Agent or the Term Agent shall elect for any reason to file, record or serve any such financing statements or other documents with respect to such Liens, then the Debtors shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of this Case on the Petition Date.

(b)        In addition, and without limiting the foregoing, upon the occurrence of the

Termination Date, and after providing five (5) business days (the "Stay Relief Notice Period")

prior written notice to (i) the Court, (ii) counsel for the Debtors, (iii) counsel for the Committee (if

appointed), and (iv) the U.S. Trustee, and in accordance with the terms of this Interim Order, the

ABL Agent and the Term Agent shall be entitled to an expedited hearing before this Court to occur

immediately following the expiration of the Stay Relief Notice Period in order to obtain relief from

the automatic stay provisions of section 362 of the Bankruptcy Code to take any action and exercise

all rights and remedies against the Collateral provided under this Interim Order (but subject to the

Intercreditor Agreement), the Loan Documents, or applicable law that the each of the ABL Agent

and the Term Agent may deem appropriate in their sole discretion to proceed against and realize

on the Collateral or any other assets or properties of Debtors' Estates on which the ABL Agent or

the Term Agent have been or may hereafter be granted liens or security interests to obtain the full

and indefeasible repayment of all Prepetition Obligations, as applicable. For the avoidance of

doubt, the Stay Relief Notice Period shall run simultaneously from the date that ABL Agent or

Term Agent provides any notice to the Debtors, the U.S. Trustee, and if appointed, the Committee,

that is required pursuant to paragraph 4 of this Interim Order.

(c)        The automatic stay provisions of section 362 of the Bankruptcy Code and

any other restriction imposed by an order of the Court or applicable law are hereby modified

without further notice, application or order of the Court to the extent necessary to permit the ABL

Agent and the Term Agent to perform any act authorized or permitted under or by virtue of this

Interim Order, the ABL Credit Agreement, the Term Loan Credit Agreement, the other Loan

Documents, as applicable, including, without limitation, (i) to implement the post-petition

financing arrangements authorized by this Interim Order, (ii) to take any act to create, validate,

evidence, attach or perfect any lien, security interest, right or claim in the Collateral, including any adequate-protection replacement liens, and (iii) to assess, charge, collect, advance, deduct and receive payments with respect to the Prepetition Obligations, including, without limitation, all interests, fees, costs and expenses permitted under the Loan Documents, and apply such payments to the Prepetition Obligations.

(d)     Subject to and effective upon entry of a Final Order, upon expiration of the Stay Relief Notice Period, the Agents, the Lenders, subject to the Intercreditor Agreement, shall be permitted to (a) access and recover any and all Collateral and (b) enter onto any leased premises of any Debtor that constitutes Collateral and exercise all of the Debtors' rights and privileges as lessee under such lease in connection with an orderly liquidation of the Collateral; *provided*, *however*, in the case of clause (b), the Agents and the Lenders can only enter upon a leased premises after the Stay Relief Notice Period in accordance with (i) a separate written agreement by and between the Agents and the Lenders, as applicable, and any applicable landlord, (ii) pre-existing rights of the Agents and the Lenders, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) entry of an order of this Court obtained by motion of the applicable Agent or Lender on such notice to the landlord as shall be required by this Court; *provided*, *however*, solely with respect to rent due to a landlord of any such leased premises, the Agents and the Lenders, as applicable, shall be obligated only to reimburse the Debtors for the payment of rent of the Debtors that first accrues after the Stay Relief Notice Period in accordance with paragraph 9(b) herein that is payable during the period of such occupancy by the Agents or Lenders, as applicable, calculated on a daily per diem basis; *provided*, *further*, that nothing herein shall relieve the Debtors of their obligations pursuant to section 365(d)(3) of the Bankruptcy Code for the payment of rent that accrues prior to the

Termination Date through and including any assumption and/or rejection of any lease. Nothing herein shall require the Agents or Lenders to assume any lease as a condition to the rights afforded in this paragraph.

11.    <u>Reversal, Modification, Vacatur, or Stay</u>. Any reversal, modification, vacatur, or stay of any or all of the provisions of this Interim Order (other than in accordance with the Final Order) shall not affect the validity or enforceability of any ABL Replacement Lien, the ABL Adequate Protection Superpriority Claim, any Term Loan Replacement Lien, the Term Loan Adequate Protection Superpriority Claim or any claim, lien, security interest, or priority authorized or created hereby with respect to any ABL Replacement Lien, the ABL Adequate Protection Superpriority Claim, any Term Loan Replacement Lien or the Term Loan Adequate Protection Superpriority Claim, incurred prior to the effective date of such reversal, modification, vacatur, or stay. Notwithstanding any reversal, modification, vacatur, or stay (other than in accordance with the Final Order), (a) this Interim Order shall govern, in all respects, any use of Cash Collateral or ABL Replacement Lien, ABL Adequate Protection Superpriority Claim, Term Loan Replacement Lien, or Term Loan Adequate Protection Superpriority Claim incurred by the Debtors prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the ABL Agent and the Term Agent, as applicable, shall be entitled to all the benefits and protections granted by this Interim Order with respect to any such use of Cash Collateral or such ABL Replacement Lien, ABL Adequate Protection Superpriority Claim, Term Loan Replacement Lien or Term Loan Adequate Protection Superpriority Claim incurred by the Debtors.

12.    <u>No Waiver for Failure to Seek Relief</u>. The failure or delay of the ABL Agent or the Term Agent to seek relief or otherwise exercise any of its rights and remedies under this Interim Order, the ABL Credit Agreement, the Term Loan Credit Agreement, the other Loan Documents

or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the ABL Agent or the Term Agent, as applicable.

13.     <u>Section 507(b) Reservation</u>. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code if the adequate-protection provided to the ABL Agent and the Term Agent, as applicable, hereunder is insufficient to compensate for any Diminution in Value during the Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the ABL Agent or the Term Agent, that the adequate-protection granted herein does in fact adequately protect the ABL Agent and the Term Agent, as applicable, against any diminution in value of their interests in the Prepetition Collateral (including the Cash Collateral).

14.     <u>Marshalling</u>. Upon entry of the Final Order, in no event shall the ABL Agent or the Term Agent be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral. Subject to the entry of a Final Order granting such relief, the ABL Agent and the Term Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities-of-the-case" exception under section 552(b) of the Bankruptcy Code shall not apply to the ABL Agent and Term Agent with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable.

15.     Without limiting the rights of the ABL Agent or the Term Agent contained in this Interim Order, the ABL Agent and the Term Agent shall have the right, upon three (3) business days written notice to the Debtors, at any time during the Debtors' normal business hours, to inspect, audit, examine, check, make copies of or extract from the non-privileged books, accounts, checks, orders, correspondence and other records of the Debtors, and to inspect, audit and monitor

all or any part of the Collateral, and the Debtors shall make all of same reasonably available to the ABL Agent and Term Agent, and each of their representatives, for such purposes.

16.     Except as expressly authorized by this Interim Order, the Cash Collateral shall not, directly or indirectly, be used to pay administrative expenses of the Debtors and or the Estates except for those administrative expenses (including the statutorily required fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. §1930 and any interest due thereon) that are set forth in the Budget or with the prior written consent (which writing may be in e-mail) of the ABL Agent and Term Agent. The Cash Collateral and the Carve Out may not be used in connection with or to finance in any way: (a) any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) for the payment of any services rendered by the professionals retained by any Debtor or Committee, or other representative of any estate, in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief invalidating, setting aside, avoiding or subordinating, in whole or in part, any Prepetition Liens or Prepetition Obligations, (ii) for monetary, injunctive or other affirmative relief against the ABL Agent, Term Agent, the Lenders, or any Prepetition Collateral, or (iii) preventing, hindering or otherwise delaying the exercise by the ABL Agent, Term Agent or Lenders of any rights under this Interim Order; (b) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the ABL Agent or Term Agent; (c) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the ABL Agent, the ABL Lenders, the ABL Prepetition Liens, the Term Agent, the Term Lenders, or the Term Loan Prepetition Liens; or (d)

-45-

prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens, the Prepetition Obligations or any other rights or interest of the ABL Agent, Term Agent and/or Lenders; provided, that up to an aggregate amount of $50,000 of (x) the proceeds of the Prepetition Collateral (including Cash Collateral) or (y) the Carve Out may be used by the Committee during the Challenge Period to investigate the claims and liens of the ABL Agent and Term Agent (and other potential claims, counterclaims, causes of action or defenses against the ABL Agent, Term Agent and Lenders.

17.     Binding Effect.  This Interim Order shall be binding on and inure to the benefit of the ABL Agent, the Term Agent, and the Debtors and their respective successors and assigns, including, without any limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code. No rights are entered under this Interim Order for the benefit of any creditor of the Debtors, any other party in interest in the Cases, or any other person or entities, or any direct, indirect or incidental beneficiaries thereof.

18.     Effect of Debtors' Stipulations on Third Parties.

(a)     Except to the extent that a Challenge (as defined below) is timely and properly commenced during the Challenge Period (as defined below) by a party with requisite standing that results in a final and non-appealable judgment or order of this Court that is inconsistent with a Stipulation contained herein, then subject to this paragraph 18, each stipulation, admission, and agreement contained in this Interim Order including, without limitation, the Debtors' Stipulations, shall be binding upon the Debtors, their Estates and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under

-46-

all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined herein) as of the Petition Date.

(b)     Nothing in this Interim Order shall prejudice the rights of any Committee or any other party in interest, if granted standing by the Court, to seek, solely in accordance with the provisions of this Paragraph 18, to assert claims against the ABL Agent, ABL Lenders, Term Agent or Term Lenders, on behalf of the Debtors or the Debtors' creditors or to otherwise challenge the Debtors' Stipulations, including, but not limited to those in relation to (i) the validity, extent, priority, or perfection of the security interests, and liens of the ABL Agent, ABL Lenders, Term Agent, and Term Lenders, (ii) the validity, allowance, priority, or amount of the ABL Obligations or the Term Loan Obligations, or (iii) any liability of the ABL Agent or ABL Lenders with respect to anything arising from the ABL Loan Documents or any liability of the Term Agent or Term Lenders with respect to anything arising from the Term Loan Documents. Notwithstanding the immediately preceding sentence, any Committee or any other party in interest must, after obtaining standing approved by the Court, commence a contested matter or adversary proceeding raising such claim, objection, or challenge, including, without limitation, any claim or cause of action against the ABL Agent, ABL Lenders, Term Agent or Term Lenders (each, a "Challenge") no later than the earlier of (i) the date that is sixty (60) days after the Committee's formation, (ii) if no Committee is appointed, then with respect to other parties in interest, no later than the date that is seventy-five (75) days after the entry of this Interim Order, (iii) the sale or sales of substantially all of the Debtors' assets or (iv) with respect to any chapter 11 trustee appointed in the Cases, or any chapter 7 trustee appointed in any Successor Case, prior to the expiration of the periods set forth in subsections (i) and (ii) above, no later than the date that is the later of (A) fourteen (14) days after the appointment of such trustee or (B) the expiration of the

-47-

time periods set forth in the foregoing subsections (i) and (ii) above (collectively, the "Challenge Period"); provided, that if prior to the expiration of the Challenge Period, the Committee (if appointed) files a motion seeking standing to prosecute a Challenge (together with a copy of the proposed complaint relating thereto attached), the Challenge Period shall be extended, solely with respect to such Challenge specifically set forth in such motion and proposed complaint, to the date this Court enters a final order on such motion seeking standing. The Challenge Period may only be extended with the written consent of the ABL Agent or the Term Agent, as applicable, prior to the expiration of the Challenge Period, and for the avoidance of doubt, any such extension shall only apply to the specific party as to whom any such extension may be granted and to the specific Agent that grants any such extension on behalf of itself and the applicable Lenders. Only those parties in interest who commence a Challenge within the Challenge Period may prosecute such Challenge. As to (x) any parties in interest, including any Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled or otherwise finally resolved or adjudicated in favor of the ABL Agent or the Term Agent, as applicable, or (y) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, any Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in the Debtors' Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Case), shall be deemed to be forever waived and barred, (2) all of the findings, Debtors' Stipulations, waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the claims, liens, and interests of the ABL Agent, ABL Lenders, Term Agent and Term Lenders, as applicable, shall be of full force and effect and forever binding upon the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor

-48-

Cases, and (3) any and all claims or causes of action against the ABL Agent, ABL Lenders, Term

Agent and Term Lenders, as applicable, relating in any way to the ABL Loan Documents, ABL

Obligations, and ABL Prepetition Liens or the Term Loan Documents, Term Loan Obligations, or

Term Loan Prepetition Liens, as applicable, shall be released by the Debtors' Estates, all creditors,

interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases.  For

the avoidance of doubt, upon a successful Challenge brought pursuant to this paragraph 18(b), the

Court may fashion an appropriate remedy.

(c)    Nothing in this Interim Order vests or confers on any person (as defined in the

Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action

belonging to the Debtors or their Estates, including, without limitation, any Challenge with respect

to the Loan Documents or the Prepetition Obligations.

19.    <u>Reporting</u>. Debtors shall provide the ABL Agent and the Term Agent with all

financial and other information required under the ABL Loan Documents and the Term Loan

Documents, as applicable, and this Interim Order, and such other information as the ABL Agent

and the Term Agent, as applicable, may from time to time reasonably request.

20.    <u>Effectiveness</u>.  The terms and conditions of this Interim Order shall be (i) effective

and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential

application of Fed. R. Bankr. P. 6004(g), 7062, 9014 or otherwise; and (ii) not be stayed absent (a)

an application by a party in interest for such stay in conformance with such Fed. R. Bankr. P. 8005,

and (b) a hearing upon notice to the Notice Parties.

21.    <u>Section 506(c) Claims</u>.  Subject to entry of the Final Order granting such relief, no

costs or expenses of administration that have or may be incurred in the Cases shall be charged

against the ABL Agent or the Term Agent, their claims or the Collateral pursuant to section 506(c)

of the Bankruptcy Code without the prior written consent of the ABL Agent or the Term Agent, as applicable, and no such consent shall be implied from any other action, inaction or acquiescence by the ABL Agent or the Term Agent, as applicable.

22.    <u>Releases</u>.  Upon the earlier of (a) the entry of the Final Order, or (b) the entry of an order extending the Cash Collateral Period, and in each instance, subject to paragraph 18 above, in consideration of the ABL Agent and the Term Agent permitting the Debtors to use the Pre-Petition Collateral (including Cash Collateral) pursuant to the provisions of this Interim Order, each Debtor, on behalf of itself and its successors and assigns (collectively, the "<u>Releasors</u>"), shall forever release, discharge and acquit the ABL Agent, the ABL Lenders, the Term Agent, the Term Lenders, and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives in their respective capacities as such (collectively, the "<u>Pre-Petition Releasees</u>"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Pre-Petition Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof in connection with the Debtors, the Loan Documents, or the Prepetition Obligations, as applicable.

23.    <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in any of the Cases, (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any of the Cases or Successor Cases, or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases; <u>provided</u>, that in the event

-50-

there is later entered any order providing for either the conversion or dismissal of any one or more of the Chapter 11 Cases, such order(s) shall make express provision, among other things, for the survival and continuing force and effect of the terms and provisions of this Interim Order notwithstanding such conversion or dismissal. The terms and provisions of this Interim Order, as well as the ABL Adequate Protection Superpriority Claim, the ABL Replacement Lien, the Term Loan Adequate Protection Superpriority Claim, the Term Loan Replacement Lien and all other claims and Liens granted by this Interim Order, shall (a) continue in this or any other superseding case under the Bankruptcy Code, (b) be valid and binding on all parties in interest, including, without limitation, any Committee, chapter 11 trustee, examiner or chapter 7 trustee, and (c) continue, notwithstanding any dismissal of any Case or Successor Case (and any such order of dismissal shall so provide), and such claims and Liens shall maintain their priority as provided by this Interim Order until the Prepetition Obligations are Paid in Full.

24.     <u>Discharge Waiver</u>.  Subject to the entry of the Final Order, the Debtors expressly stipulate, and the Court finds and adjudicates that, none of  the ABL Replacement Lien, ABL Adequate Protection Superpriority Claim, Term Loan Replacement Lien, or the Term Loan Adequate Protection Superpriority Claim shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding section 1142(d) of the Bankruptcy Code, unless (i) the order is entered with the prior written consent of the ABL Agent or the Term Agent, as applicable, or (ii) the ABL Adequate Protection Superpriority Claim or the Term Loan Adequate Protection Superpriority Claim, as applicable, has been Paid in Full in cash on or before the effective date of such plan.

25.     <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly: (a) the ABL Agent's and the Term Agent's right to seek any other relief in respect of the Debtors (including the right to seek additional adequate-protection); (b) the ABL Agent's and the Term Agent's right to seek the payment by the Debtors of post-petition interest pursuant to section 506(b) of the Bankruptcy Code; or (c) any rights of the ABL Agent and the Term Agent under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay pursuant to section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or an examiner (with or without expanded powers), (iii) propose a chapter 11 plan or plans of reorganization, subject to section 1121 of the Bankruptcy Code, or (iv) consent in writing prior to the sale of all or any portion of the Collateral outside the ordinary course of the Debtors' business (and no such consent shall be implied or construed by any action or inaction by the either the ABL Agent or the Term Agent). Other than as expressly set forth in this Interim Order, any other rights claims or privileges (whether legal, equitable or otherwise) of the ABL Agent and the Term Agent are preserved.

26.     Nothing herein or in the Budget shall be construed as consent to the allowance of any professional fees or expenses of any Professionals or shall affect the right of any party to object to the allowance or payment of such fees and expenses. Neither the ABL Agent nor the Term Agent shall be responsible for the funding, direct payment or reimbursement of any fees or expenses of any Professionals incurred in connection with the Cases or any Successor Cases. Nothing in this Interim Order or otherwise shall be construed to obligate the ABL Agent or the Term Agent in any way to pay compensation to or reimburse expenses of any Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

27.  <u>Milestones</u>. Each Debtor shall satisfy or cause to be satisfied, as applicable, each of the following conditions:

(a)  **On or prior to August 15, 2020**, the Court shall have entered interim orders in form and substance satisfactory to the Agents, authorizing the Debtors (i) to use Cash Collateral on terms and conditions acceptable to Agents; (ii) to assume Debtors' prepetition Store Closing Liquidation Agreement; (iii) to conduct the Store Closing Sales; and (iv) to use and continue to operate the Cash Management System in each case on terms and conditions satisfactory to the ABL Agent and Term Agent;

(b)  **On or prior to August 18, 2020** the Debtors shall have commenced Store Closing Sales at all retail locations, subject to Court-approved store closing procedures

(c)  **On or prior September 15, 2020**, the Court shall have entered final orders, in form and substance acceptable to ABL Agent and Term Agent authorizing the Debtors (i) to use Cash Collateral on terms and conditions acceptable to Agents; (ii) to assume the Store Closing Liquidation Agreement; (iii) to conduct the Debtors' Store Closing Sales; and (iv) to use and continue to operate the Cash Management System in each case on terms and conditions satisfactory to the ABL Agent and Term Agent;

(d)  **On or prior to October 2, 2020**, the Debtors shall have made Payment in Full of all outstanding Obligations (as defined in the ABL Credit Agreement) pursuant to the ABL Loan Documents;

(e)  **On or prior to October 30, 2020**, the Debtors shall have made Payment in Full of all outstanding Term Loan Obligations pursuant to the Term Loan Documents;

28.  <u>Application of Proceeds</u>.  All proceeds of the Collateral received by the ABL Agent and the Term Agent, and any other amounts or payments received by the ABL Agent and Term

6240799.5

Agent in respect of the Prepetition Obligations, may be applied or deemed to be applied by the ABL Agent and the Term Agent in such manner and priority as the ABL Agent and the Term Agent may determine in their discretion, all in accordance with the Intercreditor Agreement and this Interim Order. Without limiting the generality of the foregoing, the Debtor is authorized without further order of this Court to pay or reimburse the ABL Agent and the Term Agent for future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the ABL Agent and the Term Agent as provided in this Interim Order and the Loan Documents, all of which shall be and are included as part of the principal amount of the Prepetition Obligations and secured by the Collateral.

29.    <u>Final Hearing</u>.  A hearing on the Debtors' request for a Final Order approving the Motion is scheduled for **September 11, 2020, at 10:30 a.m. (Eastern time)** before this Court (the "<u>Final Hearing</u>"). Within three (3) business days after entry of this Interim Order, the Debtors shall serve, or cause to be served, by first class mail or other appropriate method of service, a copy of the Motion (to the extent the Motion was not previously served on a party) and this Interim Order on (i) the Notice Parties and (ii) counsel to any Committee. Any responses or objections to the Motion shall be made in writing, conform to the applicable Bankruptcy Rules and Local Rules, be filed with the Bankruptcy Court, set forth the name of the objecting party, the basis for the objection, and the specific grounds therefor, and be served so as to be actually received no later than **fourteen (14) days prior to the Final Hearing** by the following parties: (i) the Debtors, Stein Mart, Inc., 1200 Riverplace Blvd., Jacksonville, FL 32207, Attn: Dave Helkey; (ii) the proposed attorneys for the Debtors, Foley & Lardner LLP, One Independent Drive, Suite 1300, Jacksonville, Florida 32202, Attn: Gardner F. Davis, Esq.); (iii)  the Office of the United States Trustee for Region 21, 400 West Washington Street, Suite 1100, Orlando, Florida 32801; (v) counsel to any

statutory committee appointed in these chapter 11 cases; (vi) counsel for the ABL Agent: (a) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq; and (b) Smith Hulsey & Busey, One Independent Drive, Suite 3300, Jacksonville, Florida 32202 (Attn: Stephen D. Busey); (vii) counsel for the Term Agent (a) Morgan, Lewis & Bockius LLP, One Federal St., Boston, MA 02110-1726, Attn: Julia Frost-Davies, Esq., Matthew F. Furlong, Esq. and Christopher L. Carter and (b) Holland & Knight LLP, 50 North Laura Street, Suite 3900, Jacksonville, Florida 32202, Attn: Alan Weiss, Esq.

30.     Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

31.     Consignment Inventory.  Notwithstanding anything to the contrary set forth herein, in no event shall the Collateral include (x) any Inventory (as defined in the Uniform Commercial Code as in effect from time to time under any applicable state law) held by a Debtor on a consignment basis and as to which the consignor has complied with all applicable requirements of the Uniform Commercial Code ("Consignment Inventory"), (y) any proceeds from the sale of any Consignment Inventory that are not property of the Debtors' estates in accordance with applicable law or (z) any fixtures or similar assets owned by consignors and provided to Debtors.   The rights of consignors and Senior Agents to seek a determination as to the validity of an asserted consignment right are expressly preserved. Unless and until (a) Senior Agents commence any such action or (b) the Court approves the rejection of any "consignment" or other agreement related to the Consignment Inventory, Debtors agree to comply with the terms of the applicable consignment agreement. Counsel for the Debtors, the Senior Agents, and the consignors may submit to the Court

additional mutually acceptable language confirming the protection and perfection of consigned goods delivered to the Debtors prior to or after the Petition Date, and the proceeds thereof.

Debtors' counsel is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.

6240799.5

**<u>EXHIBIT 1</u>**

**BUDGET**

**Stein Mart**
13 Week Forecast

*(Dollars in 000's)*

| | Forecast Pre-Petition 08/11/20 | Forecast Post-Petition 08/15/20 | Forecast 2 08/22/20 | Forecast 3 08/29/20 | Forecast 4 09/05/20 | Forecast 5 09/12/20 | Forecast 6 09/19/20 | Forecast 7 09/26/20 | Forecast 8 10/03/20 | Forecast 9 10/10/20 | Forecast 10 10/17/20 | Forecast 11 10/24/20 | Forecast 12 10/31/20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Rollforward** | | | | | | | | | | | | | |
| **Beginning Cash Balance** | $ 4,252 | $ 5,000 | $ 5,000 | $ 5,000 | $ 7,500 | $ 5,000 | $ 5,000 | $ 7,500 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,555 |
| **Receipts:** | | | | | | | | | | | | | |
| Store Sales Related Receipts | 7,568 | 5,405 | 23,826 | 25,384 | 24,772 | 27,671 | 27,760 | 27,764 | 24,734 | 21,355 | 23,298 | 17,403 | 8,311 |
| Ecomm Sales Related Receipts | - | - | 1,552 | - | - | - | - | - | - | - | - | - | - |
| Credit Card Program Income | - | - | 347 | - | - | - | - | - | - | - | - | - | - |
| Other | 82 | - | 64 | 73 | 78 | 62 | 93 | 74 | 74 | 64 | 98 | 73 | 3,071 |
| **Total Receipts** | **7,650** | **5,405** | **25,789** | **25,457** | **24,850** | **27,732** | **27,853** | **27,837** | **24,808** | **21,418** | **23,396** | **17,475** | **11,381** |
| **Disbursements:** | | | | | | | | | | | | | |
| AP Merch | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| AP Expense | (552) | - | (468) | (1,363) | (2,266) | (1,700) | (2,584) | (3,115) | (2,760) | (2,434) | (2,436) | (2,549) | (2,537) |
| Base Rent | (345) | - | - | - | (7,754) | - | - | - | - | (424) | (2,911) | (304) | (2,821) |
| Other Rent | (31) | - | - | - | (606) | - | - | - | (49) | (874) | (35) | - | (353) |
| DSW/LXR | (1,370) | - | (1,722) | (1,460) | (1,534) | (1,741) | (1,777) | (1,823) | (1,912) | (1,024) | (1,321) | (1,512) | (1,300) |
| Sales Tax | - | - | (2,441) | (1,395) | - | - | - | (6,306) | - | - | - | (8,405) | - |
| Payroll | (1,114) | - | (1,268) | (1,993) | (1,268) | (1,268) | (1,993) | (3,268) | (1,993) | (1,068) | (1,008) | (537) | (3,008) |
| Payroll Tax | (2,179) | - | (563) | (810) | (563) | (563) | (810) | (1,111) | (810) | (363) | (343) | (183) | (1,023) |
| Liquidation Fees | (938) | - | (766) | (823) | (861) | (841) | (688) | (730) | (647) | (492) | (732) | (409) | (383) |
| Medical | (359) | - | (374) | (387) | (473) | (285) | (305) | (241) | (332) | (369) | (314) | (353) | (366) |
| Professional Fees | (121) | - | (462) | (465) | (587) | (509) | (434) | (431) | (556) | (481) | (431) | (423) | (423) |
| Interest | (149) | - | (202) | (175) | (580) | (256) | (202) | (2,575) | (455) | (50) | - | - | - |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Disbursements** | **(7,158)** | **-** | **(8,267)** | **(8,871)** | **(16,492)** | **(7,163)** | **(8,792)** | **(19,600)** | **(9,939)** | **(10,067)** | **(6,923)** | **(14,370)** | **(12,213)** |
| **Other Financing** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Credit Facility Borrowings** | 256 | (5,405) | (17,522) | (14,086) | (10,858) | (20,570) | (16,561) | (10,737) | (14,870) | (11,352) | (16,473) | (2,551) | - |
| **Net Change in Cash** | **748** | **-** | **-** | **2,500** | **(2,500)** | **-** | **2,500** | **(2,500)** | **-** | **-** | **-** | **555** | **(832)** |
| | | - | - | - | - | - | - | - | - | | | | |
| **Ending Cash Balance** | $ 5,000 | $ 5,000 | $ 5,000 | $ 7,500 | $ 5,000 | $ 5,000 | $ 7,500 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,555 | $ 4,723 |
| Planned Receipts | | | | | | | | | | | | | |
| **ABL Credit Agreement** | | | | | | | | | | | | | |
| **Borrowing Base:** | | | | | | | | | | | | | |
| Credit Cards | 4,825 | | | | | | | | | | | | |
| Equipment | 2,041 | | | | | | | | | | | | |
| Inventory | 167,037 | | | | | | | | | | | | |
| Total Borrowing Base Certificate | 173,902 | - | - | - | - | - | - | - | - | - | - | - | - |
| Less: Reserves | - | | | | | | | | | | | | |
| **Total Available Borrowing (Max = $275M)** | $ 173,902 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Borrowings:** | | | | | | | | | | | | | |
| Wells Revolver | 95,934 | 90,528 | 73,007 | 58,920 | 48,063 | 27,493 | 10,932 | 195 | - | - | - | - | - |
| Gordon Brothers Term Loan | 36,750 | 36,750 | 36,750 | 36,750 | 36,750 | 36,750 | 36,750 | 36,750 | 30,375 | 19,024 | 2,551 | - | - |
| Letter of Credit | 7,905 | 7,905 | 7,905 | 7,905 | 7,905 | 7,905 | 7,905 | 7,905 | - | - | - | - | - |
| Total Borrowings | 140,589 | 135,183 | 117,662 | 103,575 | 92,718 | 72,148 | 55,587 | 44,850 | 30,375 | 19,024 | 2,551 | - | - |
| **Net Available Borrowing** | $ 33,314 | $ (135,183) | $ (117,662) | $ (103,575) | $ (92,718) | $ (72,148) | $ (55,587) | $ (44,850) | $ (30,375) | $ (19,024) | $ (2,551) | $ - | $ - |